## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

IN RE HELICOPTER CRASH NEAR
WENDLE CREEK, BRITISH COLUMBIA
ON AUGUST 8, 2002

MULTIDISTRICT LITIGATION
NO. 3:04md1649 (SRU)

## RULING ON MOTION TO DISMISS AND
## MOTIONS FOR DETERMINATION OF APPLICABLE LAW

This dispute arises from the crash of a Sikorsky Model S-61L helicopter near Wendle

Creek, British Columbia that killed two Canadian pilots. Croman Corporation ("Croman"), an

Oregon company, owned and maintained the subject helicopter. The first-party plaintiffs in this

case, the surviving spouses of the two victims, alleged that Croman installed defective

components in the subject helicopter's Input Free Wheel Units ("IFWU"), which caused the

crash. They filed wrongful death actions in federal courts in Illinois and Connecticut against the

companies that allegedly manufactured or sold the defective components to Croman, which, in

turn, used the defective parts to overhaul the subject helicopter's IFWUs. The first-party

plaintiffs have since settled their claims with one set of defendants and the only remaining issue

is the extent to which each potentially responsible party is liable for the settlement.

The Judicial Panel on Multidistrict Litigation ("JPML") consolidated the cases for pretrial

proceedings in this district. Thereafter, certain of the first-party defendants filed a third-party

complaint against Croman for indemnification.

Croman now moves to dismiss the third-party complaint for lack of personal jurisdiction.

If the defendants had originally sued Croman in Oregon and the JPML had subsequently

transferred the case to this court, then Croman could have no objection to personal jurisdiction.

Because the defendants sought indemnification against Croman in Connecticut in the first instance, however, Croman argues that this court lacks personal jurisdiction. Specifically, Croman argues that its contacts with Connecticut do not fall within the reach of the Connecticut long-arm statute, Conn. Gen. Stat. § 33-929(f), and that this court's exercise of jurisdiction would violate the Due Process Clause. For reasons that follow, Croman's motion to dismiss is granted.

In addition, several parties moved to determine the applicable law governing the issues in this case. Some parties argue that British Columbia law should apply because the crash and the injury occurred in British Columbia. Other defendants argue Connecticut law should apply because, following the settlement, no Canadian parties remain in the case, and because Connecticut is the domicile of, and the center of the relationship among, most of the remaining parties. For reasons that follow, I conclude that British Columbia law applies to some issues and Connecticut law applies to others.

I.    **Background**

Unless otherwise indicated, all facts are taken from the third-party complaint and are assumed to be true for purposes of Croman's motion to dismiss. On August 8, 2002, a Sikorsky Model S-61L helicopter crashed while engaged in heli-logging operations for Croman near Wendle Creek, British Columbia. The pilot, Ronald McIntyre, and the co-pilot, Leila Brennan, both Canadian residents, died in the accident. The first-party plaintiffs, the surviving spouses of the pilots, claimed that defective components that Croman installed in the IFWUs caused the accident. The plaintiffs, however, did not sue Croman. Instead, they sued other companies that allegedly manufactured or sold the defective components.

Croman is an Oregon corporation with its principal place of business in White City, Oregon. It owns and maintains a fleet of helicopters, including the subject helicopter, that it uses for logging, firefighting, and construction operations. It also operates a Federal Aviation Administration licensed helicopter maintenance facility where it regularly overhauls its own helicopters. Croman also sells Sikorsky helicopter components to the general public. It maintains a publicly accessible website that promotes its businesses and products. Croman, however, does not do business online. Instead, it only provides the corporation's contact information, including its mailing address, telephone and fax numbers, and email address.

Croman has some contact with Connecticut. It regularly solicits price quotations and purchases replacement helicopter components from a number of Connecticut vendors. Those vendors include Rotair Industries Inc. ("Rotair"), Helicopter Support Inc. ("HSI"), and Sikorsky Aircraft Corporation ("Sikorsky"). Although Croman's contacts with Connecticut consist primarily of the purchase transactions, Croman, upon request, has also resold some helicopter parts to Sikorsky, HSI and Rotair. Affidavit of Bud Kaufman at ¶ 3. The resale transactions involved only new Sikorsky parts and did not involve parts that Croman had otherwise rebuilt, remanufactured or overhauled. *Id*. The Connecticut companies initiated all of the resale transactions and Croman has not sold any helicopter components to Connecticut companies or individuals outside of the resale transactions. *Id*.

The procedural history of this litigation is complicated and involves multiple parties. The first-party plaintiffs initially filed wrongful death actions in federal courts in Illinois and Connecticut. In Connecticut, they filed: (1) a claim against United Technologies Corporation, Sikorsky, a division of United Technologies Corporation, and HSI, a division and/or subsidiary

of Sikorsky (collectively "the Sikorsky defendants"), as the alleged manufacturers of the subject helicopter and the component parts that Croman used to overhaul the subject helicopter's IFWUs; (2) a claim against Rotair; (3) a claim against Beta Shim Company ("Beta Shim"); and (4) a claim against Richard Manufacturing Company ("Richard"). In Illinois, plaintiffs filed a claim against Hunt Screw and Manufacturing Company ("Hunt Screw"), the manufacturer or distributor of another allegedly faulty component. All of these corporations except for Hunt Screw are Connecticut corporations. Hunt Screw is an Illinois corporation with its principal place of business in Illinois.

The JPML consolidated the actions before this court. The first-party plaintiffs then settled their case with the Sikorsky defendants. The only issue that remains is the relative liability of the remaining parties to the Sikorsky defendants for their settlement with the first-party plaintiffs. Virtually every remaining and subsequently joined party is embroiled in that dispute.

Since the first-party plaintiffs settled their suit with the Sikorsky defendants, various defendants have filed crossclaims and third-party complaints. Rotair filed crossclaims against Richard, Croman and Beta Shim for indemnification and contribution. Beta Shim filed a third-party complaint against Bearing Sales Corporation ("Bearing Sales"), an Illinois corporation, for indemnification and contribution. The Sikorsky defendants filed a crossclaim against Rotair for indemnification and contribution. Finally, the Sikorsky defendants filed a third-party complaint against Croman for indemnification, contribution, and declaratory relief.

In their third-party complaint, the subject of Croman's motion to dismiss, the Sikorsky defendants allege that on September 12, 2001, months before the crash, Croman used faulty parts

from another Sikorsky helicopter to overhaul the subject helicopter's IFWUs. They further allege

that "[o]n information and belief, Croman . . . may have purchased some parts used in that

overhaul from Sikorsky or HSI." Third-Party Complaint at ¶ 19. It is unclear, however, whether

Croman actually used parts from the Sikorsky defendants to overhaul the subject helicopter's

IFWUs.

In addition, the Sikorsky defendants allege that "in its purchase of parts from Sikorsky

and/or HSI, Croman impliedly agreed with Sikorsky to undertake safe operating and maintenance

procedures, and not to use certified Sikorsky parts in an unsafe manner, and breached that

agreement in its handling and operation of the Subject Helicopter," and that:

> [b]y its actions and conduct, Croman undertook a contractual commitment
> not to use parts purchased from Sikorsky and/or HSI in a deceptive manner,
> not to hold out a remanufactured, improperly modified S-61L as a certified S-
> 61S or a certified S-61L; not to engage in dangerous operations, services
> and/or maintenance practices in aircraft held out to the public as a bona fide
> Sikorsky aircraft.

*Id*. at ¶¶ 41, 44.

On May 17, 2005 Croman answered the Sikorsky defendants' third-party complaint

asserting, among other things, that this court lacks personal jurisdiction. Over the next four

months, Croman filed several motions for extension of time to respond to discovery and to

respond to the several motions for determination of applicable law. On September 22, 2005,

Croman filed the instant motion to dismiss for lack of personal jurisdiction. On October 5, 2005

Croman responded on the merits to the choice-of-law question that is also now before the court.

## II.    Personal Jurisdiction

The Sikorsky defendants argue that this court has personal jurisdiction over Croman for

several reasons.  First, they argue that Croman has waived any objection to personal jurisdiction.

Second, they argue that Croman's actions fall within the reach of the Connecticut long-arm

statute because, by purchasing parts in Connecticut, Croman entered into an implied contract in

Connecticut that was to be performed in Connecticut, and because Croman repeatedly solicits

and conducts business in Connecticut.  Finally, they argue that this court's exercise of

jurisdiction would not offend the Due Process Clause.  Because Croman has not waived its

objection to personal jurisdiction and because the Connecticut long-arm statute does not reach

Croman's conduct, this court does not have personal jurisdiction over Croman, and there is thus

no reason to reach the due process issue.

     A.    <u>Standard of Review</u>

When faced with a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the

plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant.

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

Where, as here, there has been no discovery on jurisdictional issues and the court is relying solely

on the parties' pleadings and affidavits, the plaintiff need only make a prima facie showing that

the court possesses personal jurisdiction over the defendant.  *Bank Brussels Lambert v. Fiddler*

*Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

In diversity cases, courts apply the forum state's law to determine whether the court has

personal jurisdiction over a defendant.  *Arrowsmith v. United Press International*, 320 F.2d 219,

223 (2d Cir. 1963).  "Connecticut utilizes a familiar two-step analysis to determine if a court has

personal jurisdiction.  First, the court must determine if the state's long-arm statute reaches the

foreign corporation.  Second, if the statute does reach the corporation, then the court must decide

whether that exercise of jurisdiction offends due process." *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995) (citing *Greene v. Sha-Na-Na*, 637 F. Supp. 591, 595 (D. Conn. 1986)).

      B.    <u>Waiver</u>

The Sikorsky defendants' assertion that Croman waived its objection to personal jurisdiction is without merit and deserves little discussion. As an initial matter, Croman objected to personal jurisdiction in its May 17, 2005 answer to the third-party complaint. Still, the Sikorsky defendants assert that Croman waived its objection to personal jurisdiction through a "delay in challenging personal jurisdiction by motion to dismiss." *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2d Cir. 1999). Although a substantial delay can cause waiver in some circumstances, courts are slower to find waiver by a defendant who contests whether he is obliged to defend in a distant court contrary to the long-arm statute. *Id.*

The facts and circumstances presented in this case do not approach those of other cases where courts have found that a party waived its objection to personal jurisdiction. In most cases where courts have found waiver, the defendant has waited multiple years after its answer to file a motion to dismiss. *See, e.g., Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092 (2d Cir. 1990). In this case, Croman filed its motion to dismiss only four months after it filed its answer.

Moreover, most cases in which courts have made a finding of waiver, the defendant has engaged in substantial pretrial activity or has attempted to deceive the opposing party. *See, e.g., Hamilton*, 197 F.3d at 62. Neither has occurred here. Croman filed only two unopposed motions to extend time before filing its motion to dismiss, and responded substantively to the Sikorsky defendants' motions only after filing its motion to dismiss. In addition, Croman's initial

response to the choice-of-law issue included a sentence that stated "[b]y filing this response, Croman does not intend to waive its defense that there is no personal jurisdiction over Croman in Connecticut." Finally, many of the cases that the Sikorsky defendants cite do not even support its own position. *See, e.g., Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1303 (2d Cir. 1990); *I.L.G.W.U. National Retirement Fund v. Meredith Grey, Inc.*, 986 F. Supp. 816, 820 (S.D.N.Y. 1997). Thus, Croman has not waived its right to challenge this court's exercise of personal jurisdiction.

> C.   Connecticut Long-Arm Jurisdiction

The Connecticut long-arm statute provides that:

> [e]very foreign corporation shall be subject to suit in this state . . . whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state.

Conn. Gen. Stat. § 33-929(f). Connecticut courts interpret the "arising out of" language in the Connecticut long-arm statute as authorizing less than the full constitutional reach over the exercise of personal jurisdiction.

> If the legislature had meant to allow our courts to exercise the full extent of constitutionally permissible long-arm jurisdiction, it could have done so explicitly. Instead, the words "arising out of" in the Connecticut long-arm statute impose "some constraints on the exercise of jurisdiction that exceed those constraints imposed by the constitution."

*Thomason v. Chemical Bank*, 234 Conn. 281, 295 (1995). In short, although Connecticut's long-arm statute confers more than just traditional "specific jurisdiction," it does not confer upon

courts the full range of "general jurisdiction" that the due process clause permits.

Ascertaining just how short the long-arm statute falls from the constitutional due process limits, however, is more complex. The long-arm statute does not

> require that a party transact business within the state to be subject to suit nor does it require a causal connection between the plaintiff's cause of action and the defendant's presence in the state. It requires only a nexus between the cause of action alleged and the conduct of the defendant within the state.

*Tomra of North America, Inc. v. Environmental Products Corp.*, 4 F. Supp. 2d 90, 93 (D. Conn. 1998).

The Sikorsky defendants advance two theories to support their position that this court has personal jurisdiction over Croman pursuant to Connecticut's long-arm statute. First, the Sikorsky defendants argue that their claim for indemnification, contribution and declaratory relief arises out of an implied contract made, and to be performed, in Connecticut. Second, the Sikorsky defendants argue that Croman repeatedly solicited business from Connecticut. Both claims fail.

### 1. *Contract Claim*

The Sikorsky defendants' first argument, that this court has personal jurisdiction over Croman because Croman allegedly entered into a contract made or to be performed in Connecticut, is unsupported. As an initial matter, the Sikorsky defendants do not allege the existence of an express contract. Instead, they allege that:

> [b]y its actions or conduct, Croman undertook a contractual commitment to Sikorsky not to use parts purchased from Sikorsky or HSI in a deceptive manner; not to hold out a remanufactured, improperly modified S-61L as a certified S-61S or a certified S-61L; not to engage in dangerous operations, service and/or maintenance practices in aircraft held out to the public as bona fide Sikorsky aircraft.

Third Party Complaint Against Croman at ¶ 44.

Assuming that Croman, through its actions or conduct, entered into an implied contract with the Sikorsky defendants, that contract was not made in Connecticut. Under Connecticut law, "a contract is considered made when and where the last thing is done which is necessary to create an effective agreement." *Centennial Helicopters, Inc. v. Sterling Corp.*, 2005 Conn. Super. LEXIS 3265, *6 (Conn. Super. Ct. 2005). Although the Sikorsky defendants allege that Croman entered into a contract through its actions or conduct, they have not alleged that any of Croman's actions or conduct occurred in Connecticut. Thus, the last thing done to create an effective agreement must have occurred in Oregon or other states in which Croman operated, not in Connecticut. Unlike an express contract, which can be signed in the state where either party does business, there is nothing about the contract alleged that would permit Sikorsky's conduct in Connecticut to cause the implied contract to be made here.

In addition, any implied contract was not to be performed in Connecticut. The Sikorsky defendants allege that Croman entered into an implied contract "not to use parts purchased from Sikorsky or HSI in a deceptive manner," or "not to hold out a remanufactured, improperly modified S-61L as a certified S-61S or a certified S-61L," or "not to engage in dangerous operations, service and/or maintenance practices in aircraft held out to the public as bona fide Sikorsky aircraft," but all of those actions would be performed in Oregon or in other states in which Croman used parts or operated Sikorsky helicopters. The Sikorsky defendants do not allege that any of those actions occurred in Connecticut because Croman did not use parts or engage in operations in Connecticut.

In short, because the Sikorsky defendants have failed to allege or show facts giving rise to

an inference that Croman entered into a contract that was made or to be performed in Connecticut, they have not established a basis for personal jurisdiction pursuant to a contractual theory.

2.    *Solicitation Claim*

The Sikorsky defendant's second argument, that this court has personal jurisdiction over Croman because Croman allegedly solicited business in Connecticut, is also without merit.  The Connecticut Supreme Court in *Thomason* defined the reach of the "arising out of" language in the long-arm statute with regard to solicitation:

> The words "arising out of" therefore must be interpreted in a manner that reconciles the legislative decision to impose some limits on constitutionally permitted jurisdiction with its decision not to require a causal connection between the defendant's solicitation here and the plaintiffs' lawsuit.  Our interpretation is as follows.  For purposes of § 33-411(c)(2), a plaintiff's cause of action arises out of business solicited in [Connecticut] if, at the time the defendant engaged in solicitation in Connecticut, it was reasonably foreseeable that, as a result of that solicitation, the defendant could be sued in Connecticut by a solicited person on a cause of action similar to that now being brought by the plaintiffs.  Pursuant to our interpretation of the statute, a plaintiff need not show that, because of the acts of solicitation, the defendant was on notice that it might be sued by the plaintiff himself or herself.  A plaintiff similarly need not show that the defendant solicited his or her business in Connecticut.  A plaintiff need only demonstrate that the defendant could reasonably have anticipated being haled into court here by some person who had been solicited in Connecticut and that the plaintiff's cause of action is not materially different from an action that might have resulted directly from that solicitation.

*Thomason*, 234 Conn. at 296.

In this case, however, Croman never solicited business in Connecticut.  The Sikorsky defendants allege that Croman solicited business when it: (1) requested price quotations and purchased helicopters and parts; and (2) resold new parts back to Connecticut companies or sold

-11-

parts over the internet. Buying helicopter parts, however, is not a business solicitation, it is a purchase transaction, and Croman did not "solicit" any of the resale transactions because it did not initiate any of those sales.

In addition, Sikorsky's claims against Croman do not arise out of the alleged solicitations. Sikorsky's third-party complaint alleges Croman negligently failed to maintain the parts it *purchased*; it does not allege that Croman negligently failed to maintain parts it *sold or resold*. Thus, even if Croman solicited business in Connecticut when it sold or resold new Sikorsky parts back to the Sikorsky defendants, the instant action is materially different from any action that might have resulted from the alleged solicitation.

Because this court lacks personal jurisdiction under the Connecticut long-arm statute, there is no need to consider whether an exercise of personal jurisdiction would comport with the Due Process Clause. Additionally, there is no need to engage in a conflict-of-laws analysis to determine which law to apply to the Sikorsky defendants' claims against Croman because those claims are dismissed.

It is important to note, however, that the JPML consolidated this case for pretrial proceedings because there were multiple claims arising out of the same or related events. Therefore, should the Sikorsky defendants decide to re-file their complaint against Croman in a federal district where jurisdiction over Croman is proper (or should Croman file an action against the Sikorsky defendants seeking a declaratory judgment that it is not liable to the Sikorsky defendants), in the interests of efficiency, I strongly encourage the JPML to treat the potential claims against Croman as a follow-on action and transfer the case to this district for consolidation with this multi-district litigation proceeding

**III.    Choice of Law**

Although the first-party plaintiffs settled their claims against the Sikorsky defendants and although Croman has been dismissed for lack of personal jurisdiction, several claims still remain, specifically, the Sikorsky defendants' crossclaim against Rotair for contribution and Rotair's crossclaims against Beta-Shim and Richard for contribution and indemnification. The parties dispute which law applies to the remaining claims. In conducting a choice-of-law analysis, a court must first decide whether an actual conflict exists. The court then applies choice-of-law principles to determine which law will govern.

A.    What, if Any, Actual Conflicts Exists between Connecticut Law and British Columbia Law?

Courts apply a choice-of-law analysis when "the laws of competing jurisdictions are actually in conflict." *Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004). In this case, several conflicts exist between British Columbia and Connecticut law. First, the product liability standards of the relative jurisdictions differ. British Columbia does not recognize strict product liability. *See Prevest Properties Ltd. v. Foundation Co. Of Canada Ltd.*, 128 D.L.R. (4th) 577, 641 (1995). By contrast, Connecticut recognizes strict product liability for injury, death or property damage. Conn. Gen. Stat. § 52-572m(b).

Second, although British Columbia and Connecticut courts both apply joint and several liability, the jurisdictions conflict with respect to whether a court can consider an employer's relative fault when it apportions liability, and whether a court can consider the liability of a non-party (i.e., the "empty-chair" defense). Under British Columbia law,

> [i]f, in an action brought by a worker or dependant of a worker or by the
> Board, it is found that the injury, disablement or death, as the case may be,

-13-

was due partly to a breach of duty of care of one or more employers or workers under this Part, no damages, contributions or indemnity are recoverable for the portion of the loss or damage caused by the negligence of that employer or worker; but the portion of loss or damage caused by that negligence must be determined although the employer or worker is not a party to the action.

R.S.B.C. 1996 c. 492, s. 10.  In short, although an employer cannot be named as a defendant based on allegations that the employer's negligence caused the injury to an employee, a jury can apportion fault to the employer when it determines the overall liability of other defendants.

Connecticut workers' compensation law also generally shields employers from liability. Under Connecticut law, however, employers can be liable for "an intentional tort or where the employer has engaged in wilful or serious misconduct." *Suarez v. Dickmont Plastics Corp.*, 229 Conn. 99, 106 (1994).  To be held liable, the employer "must have intended both the act itself and the injurious consequences of the act," or the employer must have "intended the act and have known that the injury was substantially certain to occur from the act." *Suarez v. Dickmont Plastics Corp.*, 242 Conn. 255, 280 (1997).  Additionally, Connecticut negligence law permits a jury to apportion fault only among named or settled parties.  Conn. Gen. Stat. § 52-572h(o). Therefore, the jury generally cannot consider the "empty-chair" defense.

Finally, British Columbia law and Connecticut law calculate damages differently.  In British Columbia, plaintiffs cannot recover for some types of non-pecuniary damages.  For example, "[l]oss of love, guidance and affection are not compensable.  Loss of financial support, household services and, in some cases, loss of inheritance are compensable.  Each case must be decided on a judicial assessment of what pecuniary benefits the plaintiff could reasonably have expected." *Boechler v. Edwards*, [2004] B.C.J. No. 429 (BC.C. 2004).

Consequently, several conflicts exist between British Columbia law and Connecticut law and a choice-of-law analysis is necessary.

B.     Choice-of-Law Analysis

Connecticut federal courts sitting in diversity must apply the choice-of-law rules that the Connecticut Supreme Court would apply. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Connecticut courts formerly applied the doctrine of *lex loci dilicti*[1] to resolve all conflict-of-laws issues that arising from torts. *Lex loci* principles are based upon the premise that the jurisdiction where a tort occurs has a substantial interest in deterring unsafe conduct within its borders and in ensuring that its residents are justly compensated for their injuries. In *O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13 (1986), however, the Connecticut Supreme Court held that "the time has come for the law in this state to abandon categorical allegiance to the doctrine of *lex loci delicti* in tort actions. *Lex loci* has lost its theoretical underpinnings." *Id*. at 648. Although the Connecticut Supreme Court did not decide "whether to discard *lex loci* in all manifestations," it incorporated the Restatement approach "as the governing principles for those cases in which application of the doctrine of *lex loci* would produce an arbitrary, irrational result." *Id*. at 648-49. As a practical matter, however, Connecticut courts have essentially abandoned the *lex loci* approach altogether and now consider the place of injury as only one factor in the Restatement approach to the choice-of-law analysis.[2]

---

[1] *Lex loci dilicti* means "[t]he law of the place where the tort was committed." BLACK'S LAW DICTIONARY 923 (7th ed. 1999).

[2] Nevertheless, it would be irrational to apply the doctrine of *lex loci dilicti* in this case, especially because the landscape of this dispute has changed dramatically since the first-party plaintiffs settled their claims against the Sikorsky defendants. Those plaintiffs have received the settlement proceeds. Thus, Canada has no remaining interest in compensating its citizens, and

-15-

Thus, Section 145 of the RESTATEMENT (SECOND) CONFLICT OF LAWS governs the choice-of-law inquiry.

Section 145(1) provides that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Id. Section 145(1) further provides that:

> [c]ontacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id*.

In addition, when appropriate, Connecticut courts apply the principle of *dépeçage*, whereby "different issues in a single case may be decided according to the substantive law of different states." *Reichhold Chemicals, Inc. v. Hartford Accident & Indem. Co.*, 252 Conn. 774, 784 (Conn. 2000).

For reasons that follow, an analysis of the factors in the restatement leads me to conclude that: (1) *dépeçage* is appropriate in this case; and (2) British Columbia law should determine whether any of the crossclaim/third-party defendants are liable for the Sikorsky defendants' settlement with the first-party plaintiffs, that is, whether or not a particular party is a joint tortfeasor in the first instance, and Connecticut law should determine the relative degree to which those parties who are liable must contribute to and indemnify the Sikorsky defendants.

_____

one of the major rationales behind the *lex loci* doctrine thus no longer applies.

1.      *Place of Injury*

Comment (e) to Restatement Section 145 provides that "[w]hen the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law with respect to most issues involving the tort.  This is particularly likely to be so with respect to issues involving standards of conduct, since the state of conduct and injury will have a natural concern in the determination of such issues."  *Id.*  Comment (e), however, also provides that:

> Situations do arise . . . where the place of injury will not play an important role in the selection of the state of the applicable law.  This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue.

*Id*.  *See Saloomey v. Jeppesen & Co.*, 707 F.2d 671 (2d Cir. 1983) (holding that the court should apply Colorado law to a plane crash that occurred in West Virginia because, among other reasons, the location of the crash was fortuitous).

In this case, although the injury occurred in British Columbia, the importance of that contact is significantly diminished for two reasons.  First, the place of injury is fortuitous.  A "fortuitous event" is "[a] happening that, because it occurs only by chance or accident, the parties could not have reasonably foreseen."  BLACK'S LAW DICTIONARY 664 (7th ed. 1999).  The multiple helicopter-component manufacturers and distributors manufactured, sold, and distributed the subject parts to Croman in Connecticut and Oregon.  Croman then used the parts to repair and maintain its helicopters in Oregon.  According to its website, Croman has the ability and offers its heli-logging operations "anywhere on the North American continent."  The accident could have occurred almost anywhere, and it was mere happenstance that it occurred in

British Columbia.  Therefore, the parties remaining in this case could not have foreseen, much less expected, that the accident would occur in British Columbia.

Second, the location of the helicopter crash has less importance because the first-party plaintiffs have settled their claims.  The first-party plaintiffs have received the settlement proceeds and no Canadian residents or companies remain in the litigation.  Canada has no remaining interest in compensating its residents.  The cases defendants Rotair and Beta Shim cite to support the proposition that the place of injury should govern this case are distinguishable because none of the cases involved a situation where the plaintiff had already settled the case leaving only the defendants, none of whom resided in the state where the injury occurred, to allocate liability.

Although Canada has no remaining interest in compensating its residents, it does have an interest in deterring unsafe conduct within its borders.  Therefore, to the extent that this case involves determining whether any of the remaining parties committed a tort, British Columbia law still has significance.

       2.       *The Location of the Conduct That Caused the Injury*

The helicopter crash occurred in Canada, but the location of the conduct that caused the crash is unclear.  The allegedly faulty component may have been incorrectly manufactured in Connecticut or may have been manufactured in a different state.  In addition, Croman did install one component in Oregon, but it remains to be seen whether that component contributed to the crash.  Therefore, the location of conduct that caused the injury is, at best, inconclusive.

       3.       *The Domicile, Place of Incorporation, and Principal Places of Business of the Parties*

With the exception of Hunt Screw and Bearing Sales, Connecticut is the place of incorporation and/or the principal place of business of all the remaining parties. Therefore, this factor favors application of Connecticut law.

4.      *The Place Where the Relationship Between the Parties is Centered*

Connecticut has the most significant relationship to the events still in dispute. The Sikorsky defendants, along with all of the other parties remaining in the litigation, conduct business in Connecticut. The Sikorsky defendants sell helicopters and helicopter components in Connecticut. They manufactured and sold the subject helicopter to Croman in Connecticut. They also allegedly manufactured and sold the faulty replacement components that Croman used to overhaul the IFWUs. Moreover, Connecticut has a more significant relationship to this litigation because the Sikorsky defendants entered into and paid the settlement, and the Sikorsky defendants Connecticut domiciliaries.

5.      *Summary of Analysis*

The defendants' status as joint tortfeasors and the extent to which the defendants are each liable to contribute to or indemnify the Sikorsky defendants are different but related questions that must be answered separately and sequentially. Because a party's relative liability is an issue that arises only among joint tortfeasors, a court must first determine whether a party is a tortfeasor before the court can determine whether that party is liable for contribution. In this case, an analysis of the Restatement factors weighs in favor of applying different jurisdictions' laws to resolve the different questions.

With regard to the respective parties' status as joint tortfeasors, Canadian law applies. Determining relative liability is "loss allocating," whereas determining whether a tort has

occurred is "conduct regulating." Canada still has a substantial interest in regulating and deterring the conduct within its borders even though it has no remaining interest in compensating its residents. Therefore, British Columbia law should determine whether any of the parties are liable as a joint tortfeasor in the first instance.

With regard to the allocation of liability among any joint tortfeasors, Connecticut has the most significant relationship. The defendants allegedly manufactured and sold the faulty components in Connecticut. Most of the remaining parties are Connecticut domiciliaries that regularly conduct business in Connecticut, and the focus of the remaining parties' relationship is in Connecticut. These factors outweigh the place of injury because the location of the injury was fortuitous, at least with regard to the remaining parties in the case, and because the first-party plaintiffs have settled their claims, leaving no Canadian parties in the litigation. Therefore, I conclude that Connecticut law governs the relative liability of the remaining parties for the Sikorsky defendants' settlement.

## IV.    Conclusion

Third-party defendant Croman is not subject to personal jurisdiction in Connecticut because Croman lacks sufficient contacts with Connecticut to fall within the reach of the Connecticut long-arm statute. Accordingly, Croman's motion to dismiss the third-party complaint **(doc. # 115)** is hereby **GRANTED**.

For the parties that presently remain in the case, British Columbia products liability and negligence law will apply to answer the threshold question of whether any of the defendants are liable to contribute to the settlement, and Connecticut law will apply to allocate the defendants' relative degrees of fault. Accordingly, the motions to determine applicable law **(docs. ## 224,**

**226, 227, and 228)** are collectively **GRANTED** in part and **DENIED** in part.

It is so ordered.

Dated at Bridgeport, Connecticut, this 16th day of April 2007.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge
